UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15-CR-49-CDP |
| | ) | |
| JASMINKA RAMIC, | ) | |
| | ) | |
| Defendant. | ) | |


WAIVER OF INDICTMENT/PLEA TO INFORMATION


BEFORE THE HONORABLE CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


SEPTEMBER 28, 2015


**APPEARANCES:**
For Plaintiff:        Matthew Drake, AUSA
                      Howard J. Marcus, AUSA
                      Kenneth R. Tihen, AUSA
                      **OFFICE OF U.S. ATTORNEY**
                      111 South Tenth Street, 20th Floor
                      St. Louis, MO  63102

For Defendant:        J. Christian Goeke, Esq.
                      **LAW OFFICES OF J. CHRISTIAN GOEKE, P.C.**
                      7711 Bonhomme Avenue, Suite 850
                      Clayton, MO  63105


*REPORTED BY:         Gayle D. Madden, CSR, RDR, CRR*
                      *Official Court Reporter*
                      *United States District Court*
                      *111 South Tenth Street, Third Floor*
                      *St. Louis, MO  63102        (314) 244-7987*
              (Produced by computer-aided mechanical stenography.)

```
 1              (Proceedings commenced at 1:41 p.m.)

 2              (The following proceedings were held in open court and

 3    with the Defendant present.)

 4              THE COURT:  All right.  We are here in the case of

 5    United States of America versus Jasminka Ramic, Case No.

 6    4:15-CR-49, and we do have an interpreter here who needs to be

 7    sworn because she's not a court employee.  So I'll ask the

 8    clerk to swear the interpreter.

 9              (Interpreter Belma Salesevic sworn to interpret Bosnian

10    into English and English into Bosnian.)

11              THE COURT:  All right.  Thank you.

12              So Ms. Ramic is here along with her attorney,

13    Mr. Goeke, and the United States is here through Mr. Drake,

14    and, Ms. Ramic, the lawyers tell me you intend to plead guilty

15    under an agreement, you know, plead guilty to a superseding

16    information and that you have a plea agreement with the

17    Government.  Is that why you're here today?

18              THE DEFENDANT (in English):  Yes, ma'am.

19              THE COURT:  All right.  Before I accept your guilty

20    plea, I'm going to ask you some questions, and I'm going to

21    have you placed under oath before I ask you those questions.

22    Once you have sworn to tell the truth, your answers to my

23    questions are subject to the penalties of perjury, meaning you

24    could be prosecuted if you told me a lie.  Do you understand?

25              THE DEFENDANT (in English):  Yes.
```

1              THE COURT:  All right.  So I will note that the

2    Defendant is answering us in English, but the translator is

3    translating into Bosnian, and that's okay.  It's just that the

4    court reporter is only going to be taking down English, and so

5    you guys need to give her time to be able to know what she's

6    doing.  Okay?

7              All right.  Would you state your full name please?

8              THE DEFENDANT (in English):  Jasminka Ramic.

9              THE COURT:  How old are you, ma'am?

10             THE DEFENDANT (in English):  43, ma'am.

11             THE COURT:  Can you pull that mike over to her,

12   Mr. Goeke?

13             MR. GOEKE:  Yes, Your Honor.

14             THE COURT:  How far did you go in school?

15             THE DEFENDANT (in English):  High school.

16             THE COURT:  And you -- so did you go to high school

17   in Bosnia?

18             THE DEFENDANT (in English):  Yes, ma'am.

19             THE COURT:  And so I take it you read and write in

20   Bosnian?

21             THE DEFENDANT (in English):  Yes, ma'am.

22             THE COURT:  Okay.  Now, you obviously understand and

23   speak some English because you have been answering my

24   questions here in English.

25             THE DEFENDANT (in English):  Yes, ma'am.

 1          THE COURT:  How would you describe your ability to

 2   understand English to me?

 3          THE DEFENDANT (in English):  Pretty good.

 4          THE COURT:  Pretty good.  Okay.

 5          THE DEFENDANT (in English):  Pretty good.

 6          THE COURT:  However, you have requested that we have

 7   the interpreter here because you want to be sure you

 8   understand.  Is that correct?

 9          THE DEFENDANT (in English):  Yes, ma'am.

10          THE COURT:  Okay.  All right.  So you're talking

11   about pleading guilty to -- oh, let's see.  Yeah.  I never

12   swore the Defendant.  I never swore the Defendant.  I

13   apologize.  Okay.  We're going to now place you under oath.  I

14   said I was going to do it, and then I didn't do it.  So I

15   apologize.

16      (Defendant sworn.)

17      (All of Defendant's answers in the following examination

18   were given in English.)

19                      EXAMINATION

20   BY THE COURT:

21   Q   All right.  Now, are all the things you've just told me

22   also true now that you've taken the oath?

23   A   Yes.

24   Q   Okay.  The things you told me earlier.  All right.  Thank

25   you.  So both the charges that you were originally facing and

1   this superseding information that you're talking about

2   pleading guilty to do charge you with felonies.  I'm going to

3   tell you some rights and talk about those charges, but first I

4   want to make sure that you understand that you do have a right

5   to be represented by an attorney at all stages of the case,

6   and you are here, of course, with the attorney who was

7   appointed to represent you, Mr. Goeke.  Have you had enough

8   time to discuss your case with him?

9   A    Yes, ma'am.

10   Q    Are you satisfied with his representation of you?

11   A    Yes, ma'am, I am.

12   Q    Is there anything you've wanted him to do in representing

13   you that he's failed or refused to do?

14   A    No, ma'am.

15   Q    All right.  Now, the original charge against you was in

16   an indictment, and you were charged in that indictment with

17   conspiracy to provide material support to terrorists and

18   providing material support to terrorists.  That indictment was

19   returned by a grand jury.  What you're talking about pleading

20   guilty here to today, however, is a superseding information,

21   and this charge, what you're talking about pleading guilty to,

22   charges you with conspiracy to provide support to a conspiracy

23   to support terrorism.  Is that accurate, counsel?

24        MR. DRAKE:  Yes, yes, Your Honor.  Thank you.

25   Q    (By The Court) So it's a conspiracy to provide support to

1    a conspiracy.  Do you understand that?

2    A    Yes, ma'am, I understand.

3    Q    This is a felony, but it hasn't been brought before a

4    grand jury.  It's charged in an information, which is just a

5    charge that is brought by the U.S. Attorney's Office.  You

6    have a right to have a case like this brought before the grand

7    jury before the Government can proceed against you, and a

8    grand jury has -- is citizens who -- who hear evidence

9    presented by the prosecutor.  It's at least 16 people but no

10   more than 23 people, and what happens is after they hear the

11   evidence presented by the prosecutor, then they would decide

12   whether there was probable cause to bring these charges

13   against you, and at least 12 of the grand jurors would have to

14   vote for a finding of probable cause in order for you to be

15   charged with this crime.  That hasn't happened, and so if the

16   Government were to present this to the grand jury, they might

17   or might not indict you.

18        You could waive the right to an indictment on this

19   charge, in which case you could agree to go forward on the

20   information brought by the Government, and you could go

21   forward and plead guilty to it if that's what you choose to

22   do, but you do not have to do that.  If you do that, you will

23   be giving up your right to have these charges presented to the

24   grand jury.  So do you understand that you do have a right to

25   waive the grand jury but you do not have to do that?

1   A    No.  I'm sorry.

2   Q    Yeah.  So let me try it again because it was a very long

3   question.

4   A    Yeah.

5   Q    So do you understand basically what a grand jury is based

6   on my description?

7   A    Yes, yes.

8   Q    Okay.  So this charge hasn't gone before the grand jury.

9   A    Okay.

10  Q    And you can say, "I'm not going to plead guilty to a

11  felony that hasn't gone before the grand jury.  I don't want

12  to go forward on that."  Or you can say, "I agree.  I

13  understand my right to have it go before a grand jury, and I'm

14  giving up that right.  I'm waiving that right."

15  A    I am -- I want to plead guilty.

16  Q    And do you want to waive the right to go before the grand

17  jury?

18  A    (Nods head up and down.)

19       THE COURT:  Okay.  Do you all have the written

20  document?

21       MR. GOEKE:  We do, Your Honor.

22       THE COURT:  I'll ask you to sign that waiver form.

23     (Defendant and attorney confer.)

24       MR. GOEKE:  Can I have one moment, Your Honor?

25       THE COURT:  Yeah.

1      (Defendant and attorney confer.)

2           THE DEFENDANT (in English):  Okay.  Thank you.

3  Q    (By The Court) Okay.  So you've had a chance to talk to

4  your lawyer about the waiver of indictment?

5  A    Yes, ma'am.

6           THE COURT:  All right.  I will accept the waiver of

7  indictment.  I find that the Defendant is competent to waive

8  her rights to indictment, and this is being signed hereto

9  before me in open court today.  So we will proceed.

10 Q    (By The Court) So what this -- so now we're going to

11 proceed on the information, and what the information charges

12 is that beginning on a date that's not known but no later than

13 in May of 2013 and continuing through February of 2015, that

14 you and others conspired to commit a crime against the United

15 States, and that was to provide and attempt to provide

16 material resources to a conspiracy to commit acts that would

17 be offenses of murder if -- if committed in the United States.

18 So it's a conspiracy to provide support to a conspiracy to

19 support terrorism, and there are some specific acts listed in

20 this information that you're charged -- that you are charged

21 with.  So do you understand the charge you are facing?

22 A    Yes, ma'am, I do.

23 Q    Okay.  And even though you have waived your right to

24 indictment, you still do not have to plead guilty, and so I

25 want to talk about the rights you would have and the rights

1    you'll be giving up if you do decide to go ahead and plead

2    guilty here today.  First of all, do you understand that if

3    you plead not guilty you would be entitled to a speedy and a

4    public trial by a judge or a jury?

5    A    Yes, ma'am.

6    Q    At that trial, you would be presumed innocent and the

7    Government would have to prove you guilty beyond a reasonable

8    doubt.  Do you understand that right?

9    A    Yes, ma'am.

10   Q    They would try to do that by bringing in witnesses who

11   would testify in your presence.  The -- your attorney could

12   cross-examine the Government's witnesses and could object to

13   the Government's evidence, and your attorney could offer

14   evidence and could subpoena witnesses on your behalf.  If you

15   went to trial, you could testify, but you would not have to

16   testify.  If you decided not to testify, there couldn't be any

17   suggestions made to the jury or any conclusions drawn by them

18   that you were guilty because you didn't take the stand.  So do

19   you understand those are rights you would have if you pleaded

20   not guilty and you went to trial?

21   A    Yes, ma'am.

22   Q    Do you understand that if you plead guilty here today you

23   will be giving up your right to trial and the other rights

24   that go along with a trial?

25   A    Yes, ma'am.

1  Q    In other words, there won't be any trial, you will have

2  to admit to me that you are guilty of this crime, and then a

3  judgment of guilty will be entered on your plea just the same

4  as if you'd been convicted by a jury.  Do you understand that?

5  A    Yes, ma'am.

6  Q    Has anybody threatened you or forced you to get you to

7  plead guilty?

8  A    No, ma'am.

9  Q    Now, if you didn't plead guilty here today, you would

10  have a right to go forward and have motions and argue motions

11  and preliminary matters in front of the Magistrate Judge.

12  You're giving up that right here today as well.  Do you

13  understand that?

14  A    I do.

15       THE COURT:  Okay.  Counsel, could you all approach

16  the bench along with the Defendant and the interpreter?

17       (Under seal bench conference excerpted.)

18       (The following proceedings were held in open court.)

19       THE COURT:  Okay.  So the lawyers have given me a

20  document called Guilty Plea Agreement, and is there --

21  Mr. Goeke, is there a copy of that in front of your client?

22       MR. GOEKE:  Yes, Your Honor.

23  Q    (By The Court) Okay.  So, Ms. Ramic, this has your name

24  on the front, and on the last page, which is page 14, there

25  are three signatures.  Mr. Drake, the prosecutor, signed at

1    the top, and Mr. Goeke, your lawyer, signed at the bottom, and

2    there's a signature in the middle above where your name is

3    typed.  Is that your signature?

4    A    Yes, ma'am.

5    Q    Did you sign this document here today?

6    A    Yes, ma'am.

7    Q    Did you read it and discuss it with your lawyer before

8    you signed it?

9    A    Yes, ma'am, I did.

10   Q    Is everything in this document true to the best of your

11   knowledge and understanding?

12   A    Yes, ma'am, it is.

13   Q    Is there anything in here that you disagree with or you

14   don't understand?  Oh, yeah.  Sorry.

15   A    No, ma'am.

16   Q    Okay.  Have there been any promises to you or guarantees

17   to you about what your sentence would be or about anything

18   else that's not written down in here?

19   A    No, ma'am.

20   Q    Okay.  So this says that in exchange for your guilty plea

21   to this information, the one we just talked about, then the

22   United States is agreeing not to -- it's agreeing to dismiss

23   the Counts I and III of the original indictment at the time of

24   sentencing, and it's also agreeing not to bring any other

25   charges against you related to this conspiracy to provide

1    material support to Mr. Pazara and Mr. Hodzic and others as

2    discussed a little further in the agreement.  So no further

3    charges and they'll dismiss the original indictment.  And then

4    it also says that you all have some agreements about the

5    Sentencing Guidelines, and we'll talk about those in a minute,

6    but you're agreeing that either side could ask for a sentence

7    outside of what the Guidelines recommend.  So these are the

8    agreements you have with the United States.  Do you understand

9    that?

10   A    Yes, ma'am.

11   Q    On page 2 of the agreement, it lists the elements of the

12   crime, and elements are the things the Government would have

13   to prove in order for you to be guilty of this crime, and

14   they're also the things you'll have to admit to me if I'm

15   going to accept your guilty plea.

16        So the elements are that on or before February 5th of

17   2015, two or more people reached an agreement within the

18   United States to commit the crimes of providing material

19   support to a designated foreign terrorist organization and

20   providing material support, knowing or intending that it be

21   used in preparation for or in carrying out a conspiracy to

22   kill, maim, or injure persons in a foreign country, and that

23   support being money and property, such as or including first

24   aid supplies, military uniforms, boots, rifle scopes,

25   equipment, and tactical gear.  And then the next element is

1    that while you were in the United States you voluntarily and

2    intentionally joined in the agreement either at the time it

3    was first reached or at some later time while it was still in

4    effect and that at the time you joined in the agreement you

5    knew its illegal purpose, and while the agreement was in

6    effect, one or more people in the conspiracy took out an overt

7    act in the purpose of carrying out the conspiracy.

8          Now, the facts -- so those are the elements of the crime.

9    The facts of the case are listed on pages 3, 4, 5, 6, and 7,

10   and I'm going to ask you about some of those, but then I'm

11   probably going to ask the U.S. Attorney to talk about some of

12   them too, and then ask you if they are true, but let me just

13   go through first this.  First, it says you are a Bosnian

14   native who immigrated to the United States and became a United

15   States citizen.  Is that true?

16   A    Yes, ma'am.

17   Q    When did you come to this country?

18   A    October 31st, 2000.

19   Q    And when did you become a citizen?

20   A    I don't know exact date, but May 2006.

21   Q    Okay.  And then in -- you lived most of the time in

22   Rockford, Illinois.  Is that correct?

23   A    In the beginning -- in the -- in the -- I lived a couple

24   of weeks in New Jersey.

25   Q    Okay.

1  A    And we moved to Rockford, Illinois, because of my family.

2  Q    Okay.  And then at some point not long before you were

3  arrested in this case, you had moved to Germany.  Is that

4  true?

5  A    Yes, ma'am, it is.

6  Q    And your husband and children still live in Germany?

7  A    Yes, ma'am.

8  Q    Okay.  And it says that while you were in -- still living

9  in Bosnia you did know Mr. Abdullah Ramo Pazara.  Pazara?

10         MR. DRAKE:  Yes, ma'am.

11  Q    (By The Court) Is that true you knew him in Bosnia?

12  A    Yes, ma'am.

13  Q    And then it says that while you were in the United States

14  you learned he was also living in the United States, that he

15  was living in St. Louis, Missouri, and that sometime in July

16  of 2013 you learned through social media that he had left the

17  United States and had traveled to Syria where he was engaged

18  in the conflict in that country.  Is that true you learned

19  that?

20  A    Yes, ma'am.

21  Q    Okay.  And then it says that at some point you did

22  email -- and it says on August 5th, actually, of 2013, you

23  emailed Mr. Pazara and told him that you had read comments

24  about him and offered to provide him support.  Is that true?

25  A    Yes, ma'am.

1  Q    Okay.  Then I'm not going to go through all of these,

2  every fact that's in here, because it's fairly detailed, but

3  let me -- let me see if I can summarize it.  Did you know that

4  he was over there fighting in Syria?

5  A    Yes, ma'am.

6         THE COURT:  And I'll ask you, Mr. Drake, to pick up

7  from here because I'm not quite sure how much factual detail I

8  need about the terrorist-related groups, but I think some is

9  required.

10        MR. DRAKE:  Yes, Your Honor.

11        THE COURT:  So if you'll state this.  So what I'm

12 going to ask now is I'm going to ask Mr. Drake to state what

13 he believes the Government would prove, the evidence they

14 have, and then I'm going to ask you if it's true that you did

15 the things that he says you did.

16        MR. DRAKE:  Thank you, Your Honor.  And as the Court

17 indicated, it's a fairly detailed factual synopsis, and I'll

18 try and summarize that for the purposes of the elements.

19        Ms. Ramic knew that Mr. Pazara was over in Syria and

20 engaged in the fighting.  She knew that he had -- based on

21 email communications -- that he was affiliated with a

22 designated foreign terrorist organization, al-Nusra.  He had

23 indicated that he was part of the Islamic State as well.

24        THE COURT:  All right.  Hold on.

25 Q    (By The Court) So, Ms. Ramic, did you know that

1   Mr. Pazara said he was fighting for, among others, al-Nusra?

2   A      Yes, ma'am.

3              THE COURT:  Okay.  Go ahead, Mr. Drake.

4              MR. DRAKE:  Thank you, Your Honor.

5              In order to provide support to Mr. Pazara and other

6   individuals who he was fighting with as well as to help people

7   who were caught up in the humanitarian crisis and the

8   conflict, to include other women and children, Ms. Ramic

9   agreed to provide support to Mr. Pazara and others who were

10  over there, to help them in their endeavors in fighting in the

11  conflict.

12             Based on their discussions, Mr. Pazara ultimately

13  directed Ms. Ramic to get in touch with Mr. Hodzic here in the

14  United States.  When Ms. Ramic did that, Mr. Hodzic had

15  already been providing support as described in the Plea

16  Agreement -- boots, rifle equipment, scopes, things like

17  that -- to Mr. Pazara.  Ms. Ramic agreed to provide Mr. Hodzic

18  money as well as supplies, which included first aid supplies,

19  so that Mr. Hodzic could then -- and when I say Hodzic, it's

20  Mr. Siki Ramiz Hodzic and Ms. Sedina Hodzic, who are husband

21  and wife.  She agreed to provide them money and those supplies

22  so that they could then give that to Mr. Pazara in Syria while

23  he was engaged in the conflict.

24  Q     (By The Court) Okay.  And so -- so is -- Ms. Ramic, is

25  that true -- what he's just said?

```
1   A    Yes, ma'am.

2   Q    And so you agreed to help provide money and supplies to

3   help Mr. Pazara?

4   A    Yes, ma'am, I did.

5   Q    And as part of that, did you send money on at least --

6   well, I guess maybe three different occasions you sent money?

7   A    Yes, ma'am.

8   Q    And sometimes you also provided supplies.  Is that

9   correct?

10  A    Yes, ma'am.

11          MR. GOEKE:  Your Honor, if I may interject?

12          THE COURT:  Yeah.

13          MR. GOEKE:  Just factually, the supplies that

14  Ms. Ramic provided consisted of some first aid material and

15  some hot chocolate.

16          THE COURT:  Hot chocolate.  Yeah.

17          MR. GOEKE:  So the scope, the military equipment,

18  none of that was provided by Ms. Ramic.

19          THE COURT:  Right.

20  Q    (By The Court) Is that correct?

21  A    Yes, ma'am.

22  Q    But you knew when you gave them the money that they would

23  use that for whatever they needed and that included military

24  equipment.  Correct?

25  A    I saw the picture, yes, yes.  When I saw the picture --
```

1    but -- but then -- that Mr. Hodzic send me on Facebook, I

2    realize that, what he's doing.

3    Q    And so you did -- and he sent you a picture that showed

4    the things in one of the packages he was sending?

5    A    Yes, ma'am.

6    Q    And it had your -- was your hot chocolate and first aid

7    stuff in that same box?

8    A    Yes, ma'am.

9    Q    And then there was also this military equipment?

10   A    Yes, ma'am.

11   Q    And then even after that, you sent him more money to send

12   to Mr. Pazara.  Correct?

13   A    Yes, ma'am.

14        THE COURT:  Okay.  All right.  Mr. Drake, anything

15   further you wish to --

16        MR. DRAKE:  No, Your Honor.  The only thing that I

17   would add is -- is that during their discussions, Mr. Pazara

18   had informed not only Mr. Hodzic, who then told Ms. Ramic, but

19   also directly Ms. Ramic that the activities that he was

20   engaged in overseas included people being injured and killed.

21   He specifically made references to some of his fellow fighters

22   that had died during the conflict as well as other people.

23   And just so we're very clear, Ms. Ramic knew that that was

24   going on.  She was not saying to Mr. Hodzic, "Here's money

25   that" -- for Mr. Pazara to kill someone, but she was aware

1   that that's what Mr. Pazara was engaged in.

2   Q    (By The Court) Is that all true?

3   A    Yes, ma'am.

4        THE COURT:  Okay.  And you feel that that's

5   sufficient for the factual basis for the plea?

6        MR. DRAKE:  Yes, Your Honor.  Thank you.

7        THE COURT:  Okay.  And I do too.  I believe that is

8   sufficient.  So I will accept that factual basis for the plea,

9   and I believe it is sufficient.

10  Q    (By The Court) Now I want to talk to you about the

11  penalties in the case.  So what you're pleading guilty to has

12  a maximum penalty of a maximum of five years in jail, a fine

13  of not more than $250,000, and I could impose both prison and

14  a fine, and there's a period of supervised release of up to

15  three years.

16       Now, the sentence will also be affected by the

17  Sentencing Guidelines, and the Guidelines are a set of rules

18  that apply points to different things, and when we apply the

19  Guidelines to your case, we end up with a result called the

20  Sentencing Guidelines range, and that's the range of jail time

21  that the Guidelines are recommending for you.  The Guidelines

22  also have departures, and those are reasons I could give a

23  higher or a lower sentence than called for in the Guidelines,

24  and the Guidelines are an advisory system, meaning that a

25  judge does not always have to follow the recommendations of

1   the Guidelines.  What I do have to do, though, in every case

2   is figure out what the Guidelines recommend, determine whether

3   you're eligible for any departures for any of the reasons that

4   are listed in the Guidelines, and then I can consider other

5   things about you and your background and the crime in the case

6   to help me come up with the correct sentence.

7         To help me do all of that, we will have a Presentence

8   Report prepared by the Probation Office, and that report will

9   have a lot of information about you and the crime and the

10   purpose -- and -- and any prior convictions you might have.

11   It will also calculate what the Probation Office believes the

12   Sentencing Guidelines should be.  You and your lawyer and the

13   Government lawyer will get copies of the Presentence Report

14   before sentencing.  Both sides have a right to object if

15   there's anything in the Presentence Report that's not correct.

16         I won't sentence you until I've considered any

17   objections filed by either party and then rule on those

18   objections, read the Presentence Report, and then hear

19   anything you wish to say at the time of sentencing.

20         So do you understand generally how the sentencing

21   process works?

22   A    Yes, ma'am.

23   Q    Okay.  I don't know enough about you at this point to

24   know what your sentence will be or whether these Guidelines

25   are correct.  Do you understand that?

1   A    Yes, ma'am.

2   Q    So even though you've made some agreements with the

3   Government about the Guidelines, I'm not promising to follow

4   them, and if, for some reason, I didn't follow them and you

5   ended up with a higher sentence than you were hoping for, you

6   wouldn't be able to use that as a reason to withdraw your

7   guilty plea.  Do you understand that?

8   A    Yes, ma'am.

9   Q    Okay.  Now, now, what the -- the agreement you've got is

10  that the base offense level is 33 and that the Government

11  agrees you have accepted responsibility for your criminal

12  conduct and you should get three levels off for accepting

13  responsibility, and then additionally, the Government's

14  agreeing that you're a minimal participant, and so four levels

15  should be deducted from the offense level, but then it says

16  because the offense is a felony that involved or was intended

17  to involve -- intended to promote terrorism, the offense level

18  is then increased by 12 levels.  So you all are estimating

19  that the total offense level is 38.  So those are the

20  agreements you have with the Government.  Do you understand

21  that?

22  A    Yes, ma'am.

23  Q    Okay.  Now, your criminal history will also be part of

24  the calculation, but we leave that for the Presentence Report.

25       Then on page 9, there is a waiver of appeal and

1  postconviction rights, and this is an important part of your

2  Plea Agreement.  First of all, we never -- if someone pleads

3  guilty, they give up their right to appeal whether they're

4  guilty or not, and I mentioned earlier giving up your right to

5  waive motions.  You're basically giving up your right to

6  challenge anything that's happened up until this point.

7  A    Yes, ma'am.

8  Q    Do you understand that?

9  A    Yes, ma'am.

10 Q    Now, if you didn't have this part of your agreement,

11 either you or the Government could appeal the sentence in the

12 case, but in this case, as part of your agreement with the

13 Government, both sides are agreeing that if I follow these

14 recommendations about the Sentencing Guidelines and, in your

15 case, if I sentence you either within or below those

16 Guidelines, then you're giving up your right to appeal the

17 sentence as well.  Do you understand that?

18 A    Yes, ma'am.

19 Q    And you're also giving up your right to file a habeas

20 corpus or a postconviction motion, and that's a motion where

21 you would come back later and claim your rights had been

22 violated here, and you're giving up the right to file that

23 kind of a motion unless you later find out something that you

24 think is prosecutorial misconduct, meaning something Mr. Drake

25 or the Government did wrong, or ineffective assistance of

1    counsel, meaning something Mr. Goeke did wrong.  So except for

2    that, you're giving up your right to file a habeas corpus.  Do

3    you understand that?

4    A    Yes, ma'am.

5    Q    Okay.  This goes on to say you'll provide information to

6    the Government and the Probation Office and they can share

7    that with the U.S. Attorney's Office.  It also says that you

8    understand nothing in this document limits the rights of the

9    United States to take civil, tax, immigration, or deportation

10   or administrative action against you if they thought they had

11   the right to do so.

12        Whenever you are convicted of a felony such as this, you

13   do lose certain civil rights.  You lose the right to possess a

14   firearm for any purpose.  You may lose the right to vote or

15   run for office or serve on a jury, and if you're not a

16   citizen, you could be deported.  So do you understand the

17   consequences of pleading guilty?

18   A    Yes, ma'am, I do understand.

19   Q    Okay.  There's also a $100 mandatory special assessment

20   that I have to impose as part of the penalty in the case, and

21   if there was any property seized during the crime, then -- or

22   during the investigation by the police, you're agreeing that

23   could be forfeited to the Government.  I could also impose

24   other monetary penalties or fines and restitution.

25        The agreement here on page 12 goes back through your

24

1    rights and describes those again.

2         On page 13, it says that you're entering the plea

3    voluntarily and also that you understand if you were to do

4    anything in between now and sentencing that was inconsistent

5    with this agreement or inconsistent with accepting

6    responsibility, for example, if you committed a new crime or

7    you tried to obstruct justice or tried to escape from jail or

8    anything like that, then the Government wouldn't have to

9    follow this agreement and they could argue for a higher

10   sentence, although because of what you pleaded guilty to they

11   could never argue for a sentence any higher than the five

12   years because that's the maximum, but they could argue for

13   higher than they've agreed to here or higher than what you

14   were hoping for.  So do you understand -- and of course, if

15   you did those things, you could also be charged with new

16   crimes as well.  So do you understand that?

17   A    Yes, ma'am, I do understand.

18   Q    Okay.  And then finally, if you go ahead and plead guilty

19   here today, you will not be able to change your mind.  Do you

20   understand that?

21   A    Yes, ma'am.

22        THE COURT:  Does either counsel have anything further

23   I should inquire into?

24        MR. DRAKE:  No, Your Honor.  Thank you.

25        MR. GOEKE:  No, Your Honor.  Thank you.

1  Q    (By The Court) Okay.  So, Ms. Ramic, you've told me

2  enough for me to accept your guilty plea, but I haven't done

3  that yet because I want to make sure that now that we've gone

4  through the document and discussed your rights you still wish

5  to plead guilty instead of going to trial.  Is that what you

6  want to do?

7  A    Yes, ma'am, it is.

8  Q    Then let me ask you how you plead to the charge in the

9  information -- guilty or not guilty?

10  A    Guilty.

11      THE COURT:  Okay.  I will accept your guilty plea,

12  and I will -- I find that you are -- understand your rights,

13  you know what you're doing, you're entering the plea knowingly

14  and voluntarily, you're competent to do so, and the plea has a

15  factual basis that contains all the elements of the crime.  So

16  I will accept the plea, and I will set the case for sentencing

17  on Tuesday, January 5th, at 2:00 p.m.  Any objections to the

18  Presentence Report are due on or before December 15th of 2015.

19  So the sentencing will be January 5th at 2:00 p.m.  Any --

20      MR. GOEKE:  December 15th for the objections, Your

21  Honor?

22      THE COURT:  Yeah, December 15th.

23      Anything further at this time?

24      MR. GOEKE:  Not for the Defendant, Your Honor.

25      THE COURT:  Okay.  I will see you then, Ms. Ramic, in

1    January at sentencing, and the Defendant is remanded to the

2    custody of the Marshals pending sentencing.

3            MR. GOEKE:  Thank you, Your Honor.

4            THE COURT:  And we'll be in temporary recess, and I

5    want to thank the interpreter for your services today, and

6    Melanie and Laura will tell you whatever you need to know.

7        (Proceedings concluded at 2:16 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>CERTIFICATE</u>

I, Gayle D. Madden, Registered Diplomate Reporter and Certified Realtime Reporter, hereby certify that I am a duly appointed Official Court Reporter of the United States District Court for the Eastern District of Missouri.

I further certify that the foregoing is a true and accurate transcript of the proceedings held in the above-entitled case and that said transcript is a true and correct transcription of my stenographic notes.

I further certify that this transcript contains pages 1 through 26 inclusive.

Dated at St. Louis, Missouri, this 21st day of August, 2016.

_____

/s/ Gayle D. Madden

GAYLE D. MADDEN, CSR, RDR, CRR

Official Court Reporter